
FILED
APR 04 2014
Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FRIENDS OF THE WILD SWAN and others,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE and others,<br><br>Defendants. | CV 11–125–M–DWM<br><br>ORDER |

## INTRODUCTION

Defendant United States Forest Service filed a second motion to dissolve the injunction in response to the Court's July 11, 2012 order. (Doc. 68.) That order included a remand to the Forest Service to prepare a Supplemental Environmental Assessment ("SEA") regarding the cumulative effects on lynx of the Colt Summit Restoration and Fuels Reduction Project ("the project" or "Colt Summit Project") and an injunction preventing the implementation of the project unless and until the SEA was completed. The injunction is dissolved for the reasons set forth below.

1

## BACKGROUND

The Forest Service initially prepared an Environmental Assessment ("EA") for the Colt Summit Project which proposes, among other things, to manage vegetation on 2,038 acres of commercial and non-commercial land, to restore four miles of streamside road, to construct 1,300 feet of road, to reconstruct 5.1 miles of road, to brush and to winter haul on approximately 13.1 miles of road, to construct 2.1 miles of temporary and snow road, to decommission 28.4 miles of road, to replace one and to repair one aquatic barrier culvert, and to treat noxious weeds along approximately 34 miles of road. After reviewing the EA, the Forest Supervisor issued a finding of no significant impact for the project.

After the project was approved, Plaintiffs brought suit and made multiple claims for summary judgment alleging failures to comply with the National Environmental Policy Act ("NEPA"), to ensure compliance with the forest plan standards required by the National Forest Management Act ("NFMA"), and to comply with Section 7 of the Endangered Species Act ("ESA"). (Docs. 30 and 31.) One aspect of Plaintiffs' motion was granted on the limited grounds that the Forest Service violated NEPA by failing to adequately analyze the Colt Summit Project's cumulative effects on lynx. The defendants prevailed in all other respects. (*See* Doc. 50.) Within the order granting summary judgment, the Court

deferred to the agency's determination of the scope of review to the Clearwater Lynx Analysis Unit ("LAU"), a sufficient size to consider the project's cumulative effects for management considerations by lynx specialists. (*Id.* at 41–43.) The issue was remanded to the Forest Service "so that it may prepare a supplemental environmental assessment consistent with this order and the law." (*Id.* at 46.)

On January 25, 2013, the Forest Service prepared a "supplement to the environmental assessment" and filed a motion to dissolve the injunction. (Doc. 60.) The supplement was non-responsive so the request to dissolve was denied because the Forest Service's document was not a required NEPA document. (Doc. 67.) The Service then prepared a Supplemental Environmental Assessment ("SEA"), and on December 19, 2013, filed a second motion to dissolve the injunction. (Doc. 68.) This motion is currently before the Court.

## SUMMARY CONCLUSION

The motion to dissolve is accompanied by an SEA within the meaning of NEPA and the NEPA regulations. The SEA analyzes the total cumulative impacts to lynx in the Clearwater LAU although with less than ideal clarity. Plaintiffs' objections to the July 2012 order determining the geographic scope of the cumulative effects analysis cannot be considered, as the time limit for making such

3

a motion has expired pursuant to Rule 60(c)(1).[1] The injunction will not remain in place pending the completion of the consultation ordered in *Salix*, as it is beyond the scope of the injunction to reconsider the Court's order that the ESA's Section 7 obligations were met and Plaintiffs did not show "likely and irreparable" harm necessary to maintain an injunction.

## STANDARD

Relief from a final judgment is appropriate if the judgment has been "satisfied, released or discharged . . . or applying it prospectively is no longer equitable[.]" Fed. R. Civ. P. 60(b)(5). Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotation marks and citation omitted). A party moving to dissolve an injunction "bears the burden of establishing that changed circumstances warrant relief." *Id.*

---

[1] Plaintiffs also raised the same argument regarding significant new information in their response in opposition to the first Motion to Dissolve Injunction on February 14, 2013, within the time limit imposed by 60(c)(1). However, 60(b) requires a request for relief from a final Order to be made on motion.

4

ANALYSIS

A. **The SEA is consistent with the Court's order and procedures required by law.**

In the first motion to dissolve the injunction, the NEPA procedures were not followed in the submitted supplementary EA. (Doc. 50 at 46.) Here, Plaintiffs do not object to the procedure utilized in developing this SEA. The SEA was prepared, circulated and filed in the same manner as a draft and final statement. The SEA followed NEPA procedural requirements. As such, the SEA is a supplemental EA within the meaning of NEPA and the NEPA regulations. *See* 40 C.F.R. § 1502.9(c)(4).

B. **The SEA analyzes the total, cumulative impacts to lynx in the Clearwater LAU.**

A review of the agency's action is deferential, "presuming the agency action to be valid." *Buckingham v. Secy. of U.S. Dept. of Agric.*, 603 F.3d 1073, 1080 (9th Cir. 2010) (quoting *Irvine Med. Ctr. v. Thompson*, 275 F.3d 823, 830–31 (9th Cir. 2002)). It is acceptable to "uphold [an agency] decision of less than ideal clarity if the agency's path may be reasonably discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. St. Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In doing so, a court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *SEC v. Chenery Corp.*, 332 U.S. 194,

196 (1947). Nor may a court substitute its view for that of the agency "concerning the wisdom or prudence of a proposed action." *City of Carmel–by–the–Sea v. U.S. Dept. of Transp.*, 123 F.3d 1142, 1150 (9th Cir. 1997) (quoting *Or. Envtl. Council v. Kunzman*, 817 F.2d 484, 492 (9th Cir. 1987)).

NEPA is procedural and it is intended to protect the environment by fostering informed agency decision-making. *See Cal. ex rel. Lockyer v. U.S. Dept. of Agric.*, 575 F.3d 999, 1012 (9th Cir. 2009). NEPA "does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions." *High Sierra Hikers Assn. v. Blackwell*, 390 F.3d 630, 639 (9th Cir. 2004) (citation and internal quotation marks omitted). "Once satisfied that a proposing agency has taken a 'hard look' at a decision's environmental consequences, [the court's] review is at an end." *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1519 (9th Cir. 1992).

### 1. Cumulative Impacts Analysis

A cumulative analysis under NEPA requires an analysis of the proposed project's impact in light of that project's interaction with the effects of past, current, and reasonably foreseeable future projects. 40 C.F.R. § 1508.7 (defining "cumulative impact"); see *Lands Council v. Powell*, 395 F.3d 1019, 1027 (9th Cir.

2005). The Forest Service may characterize cumulative effects in the aggregate "without enumerating every past project that has affected an area." *League of Wilderness Defenders Blue Mts. Biodiversity Project v. Allen,* 615 F.3d 1122, 1136 (9th Cir. 2010). "An aggregated cumulative effects analysis that includes *relevant* past projects is sufficient." *Ecology Ctr. v. Castaneda,* 574 F.3d 652, 666–67 (9th Cir. 2009) (emphasis in original). "Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F. R. § 1508.7. Calculating affected acres is a necessary, but insufficient, description a project's actual expected effects. *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgt.,* 387 F.3d 989, 994–995, 997 (9th Cir. 2004) (finding NEPA requirements were not met when the project did not identify or discuss incremental impacts or how those individual impacts combine or synergistically interact with each other to affect the environment). Discussing only direct effects of a project in lieu of cumulative impacts is inadequate. *Id.* at 994.

In this case Plaintiffs argue that although the Forest Service provided information "regarding past, present, and foreseeable projects and activities in the area and the total acreage affected," it did not provide a cumulative effects *analysis* of the total combined environmental impacts. (Doc. 74 at 5–7.) Plaintiffs

7

specifically contend no analysis was done on past regeneration harvest projects, previous wildfires, existing winter recreation, compliance with the Lynx Direction, thinning projects' effect on lynx movement or impact on the maintenance and recruitment of lynx winter habitat (mature, multi-storied forest stands), hunting and trapping, private land development, high lynx mortality rates, road impacts, and climate change. (*Id.* at 9–10.) Plaintiffs also insist that the Forest Service's environmental analysis defining lynx winter habitat is based on old science from Alaska and Canada. (*Id.* at 9.)

The Forest Service met NEPA standards here. The SEA provides data on current conditions in the Clearwater LAU. X–001:FS78952–54.[2] As stated by the Forest Service, "present conditions do reflect the relevant aggregate effects of past actions." (Doc. 75 at 3 (emphasis omitted).) "Past actions can be summarized to describe present conditions (affected environment)." *CEQ*, Guidance on the Consideration of Past Actions in Cumulative Effects Analysis (June 24, 2005). The SEA also lists relevant past projects that have contributed to the current lynx habitat conditions in the LAU, going back as far as a wildfire in 1900. X–001:FS78955 (the largest recorded fires were listed, along with the number of acres burned in lynx habitat and how those fires impact current conditions). Other

---

[2] This format is used to remain consistent with SEA documents cited by both parties: [Section] – [Document number] : [Bates Number].

current project effects were combined with past projects in the description of the current condition of the LAU. X001:FS78969–78971 (projects within Seeley Lake Ranger District and the Flathead National Forest were considered and found to have no impact or no overlap in space or time). Future projects were also taken into account. *Id.*; X–001:FS78967 (the Swan Face Ecoburn was found not likely to impact suitable lynx habitat, even temporarily).

Plaintiffs claim that, although the Forest Service provides useful information, there is "no analysis of the total, combined impacts." (Doc. 74 at 1.) However, Plaintiffs ignore the lengthy discussion and summary table of cumulative impacts in the SEA. X–001:FS78942–78982; specifically X–001:FS78964–78967 (Table 22 is the cumulative effects table Plaintiffs argue insufficient) X–001:FS78967–78980 (discussion following the table that explains the underlying analysis used in creating the summary table). Plaintiffs insist there is no analysis of the total combined impacts, as the bullet-point list summarizing the cumulative analysis focuses only on the impacts of the Colt Summit Project rather than outlining an aggregate analysis. X–001:FS78981. However, the table and the overall summary are supported by hundreds of pages of data, as well as fifteen pages of a cumulative effects analysis. The Forest Service considered possible overlapping effects from other past, present, and future projects and

9

natural disasters such as wildfires, vegetation management, snowmobile use, predation and starvation, surrounding private land use, and fuels reduction projects. X–001:FS78955 (wildfire analysis and fire impacts on current conditions); X–001:FS78967–78969 (vegetation management was considered in conjunction with past regeneration, wildfire, and private land activities and although it was found to have some impact, if falls within the Lynx Direction standards); X–001:FS78974–78975, 78990 (there is no evidence indicating snowmobiling is detrimental to lynx); X–001:FS78978 (predation and starvation considered in conjunction with harvesting, prescribed fire, and underburning effects on snowshoe hares); X–001:FS78974, 78978–78990 (private land activities are considered in conjunction with road development and considered to have no effect or even to reduce impediments to lynx); X–001:FS78829–78830 (thinning considered cumulatively with wildfires); X–001:FS78853–78854 (thinning considered in conjunction with vegetation management and private land use).

Effects on lynx habitat connectivity, snowshoe hare habitat, denning habitat and road densities were also considered. X–001:FS78994–78997 (table listing effects considered); X–001:FS78971–78973 (habitat connectivity considered existing roads, private ownership, thinning and regeneration); X–001:FS78978 (an examination of the beneficial effects of harvesting, prescribed fire, and

10

underburning to snowshoe hares); X–001:FS78975–78976 (discussion on leaving a mosaic of forest age and structure classes for purposes of denning and foraging); X–001:FS78973–78978 (project impacts on road densities).

Plaintiffs specifically note the analysis of trapping and hunting is insufficient. (Doc. 74 at 9–11.) In its review of these activities, the Forest Service found any potential impact would not be detrimental to the lynx. X–001:FS078978 (finding the project would actually decrease public access, which is likely beneficial to lynx). Therefore, any effect this would have on the collective impact of the project is arguably beneficial and does not change the cumulative effects analysis.

Plaintiffs have not pointed to any past action or potential significant effect that was not considered in the aggregate cumulative effects of the Colt Summit Project. The Forest Service has provided an analysis of overlapping effects of past, current and foreseeable projects and impacts. Although the Forest Service has presented the aggregate cumulative effects, and has done so with less than ideal clarity, the path of its reasoning and what it considered can be reasonably discerned and no additional data or supplemental analysis is needed.

## 2. The Lynx Direction as a basis for the cumulative analysis

The United States Fish and Wildlife Service listed Canada lynx as a threatened species in March 2000, citing the main threat as a lack of guidance for conservation. M16–21:FS014789. In 2007, the Forest Service published the Northern Rockies Lynx Management Direction ("Lynx Direction"), which provided guidance on lynx conservation actions on federal lands occupied by lynx. M16–21:FS014779 – FS014780. The Lynx Direction lists issues to consider, standards for management requirements, and guidelines for management actions to meet lynx objectives. M16–21:FS014806. The Forest Service has previously used the Lynx Direction as a basis to consider the impact of a project on wildlife when preparing an EA under NEPA. *Native Ecosystems Council v. Krueger*, 946 F. Supp. 2d 1060, 1066 (D. Mont. 2013) (finding that by "[h]aving adequately considered the Lynx Direction in developing the Project, the Forest Service complied with the Forest Plan and discussed the best available science for maintaining lynx viability.").

Plaintiffs additionally argue that "[c]ompliance with the Lynx Direction is a separate and independent obligation from NEPA's cumulative effects requirement." (Doc. 74 at 11.) They insist that even if the Lynx Direction is satisfied, there could still be cumulative significant impacts to lynx. *(Id.)*

Although NEPA cumulative effects requirements and compliance with the Lynx Direction are separate obligations, the Lynx Direction provides standards and guidelines to meet lynx objectives, which also inform the Forest Service on what matters in a cumulative effects analysis. (Doc. 75 at 5–6 (stating the Lynx Direction provides "relevant and useful" indicators).) In order to determine if a project will inflict significant harm or have a significant impact on lynx, the Forest Service should rely on standards already in existence to determine the viability of lynx in light of the current proposal. If those objectives are met, arguably a project will not significantly harm lynx.

Plaintiffs argue, and the Forest Service emphasizes, a view that this Court originally held that the project "did not premise consultation on the Lynx Direction." (Doc. 74 at 28; Doc. 75 at 14–15.) However, this perception is an inaccurate restatement of the earlier order. *Friends of the Wild Swan v. U.S. Forest Service,* 875 F. Supp. 2d 1199, 1210 (D. Mont. 2012) (stating "[w]hile interesting, the thesis [regarding the Lynx Direction] misses the point" and making no further comment or holding regarding whether or not consultation was premised on the Lynx Direction). Although falling outside the scope of the injunction, consideration of consultation is necessary as a component of the basis for the cumulative effects analysis in the SEA.

The Forest Service relied on the Lynx Direction for standards to assess the aggregate cumulative impacts of the Colt Summit Project. The SEA mentions designing the project to retain the natural factors associated with the primary constituent elements ("PCEs") of lynx critical habitat. X–001:FS78851. In an attempt to analyze cumulative effects, the Forest Service stated the Glacier Loon project would reduce forage habitat. X–001:FS78971.[3] However, the effects of a reduced PCE was analyzed using Lynx Direction thresholds. *Id.* The Lynx Direction was used as an overarching guideline to determine that the reduction in forage habitat would not be cumulatively detrimental. *Id.*; X001:FS79059–060. However, reliance on the Lynx Direction was justified, as it shows the Forest Service took a "hard look" at the impacts of the Colt Summit on lynx in the Clearwater LAU. Even though Plaintiffs do not like the result of the Forest Service's aggregate cumulative analysis, NEPA does not require specific outcomes, but only provides the process that agencies should use in order to take a "hard look" at a project's impacts. The requisite "hard look" was taken here.

---

[3] The Forest Service states the Glacier Loon project is consistent with the Lynx Direction. They then make a conclusory statement that because the project is within the Lynx Direction thresholds its effects would not cumulatively be detrimental. This is a leap in logic, as meeting the Lynx Direction thresholds does not indicate lack of cumulative effect. However, as a final alternative for the Glacier Loon project has not been selected, the impacts of the project are arguably undeterminable.

### C. Plaintiffs' new significant facts regarding the expansion of the cumulative effects analysis beyond the single, Clearwater LAU does not support maintenance of the injunction.

Plaintiffs claim that the geographic scope of the cumulative effects analysis needs to be expanded. The July 11, 2012 order found that the Forest Service properly determined the scope of its cumulative effects review, limiting it to the Clearwater LAU. (Doc. 50 at 43.) Plaintiffs argue that significant new information on lynx in the Seeley Lake area suggests the need to expand the cumulative effects analysis beyond the single, Clearwater LAU. (Doc. 74 at 16–28.)

Under Federal Rule of Civil Procedure 60(c)(1), a motion made under Rule 60(b)(2) regarding newly discovered evidence must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Even if Plaintiffs properly asserted their claims in a Rule 60 motion, the time limit for making such a motion has expired. The order and injunction now at issue date back to July 2012. In addition, even if a motion was made within the time limit requirement, "the Squires study" cited by Plaintiffs as their new significant information was considered in the project. (Doc. 75 at 11.) The Squires letter cited by Plaintiffs explains the importance of the Seeley Lake area to lynx, including the impact of thinning and forest fragmentation. The letter does not,

15

however, contain specifics as to how much thinning would be detrimental to the mosaic of suitable habitat for lynx, nor does it rely on new data not already considered by the Forest Service. Finally, the Forest Service considered logging projects noted by Plaintiffs that fall within the Clearwater LAU. (Doc. 75 at 13.) Projects in the Clearwater LAU comply with the Lynx Direction, while projects outside the Clearwater LAU were outside of lynx habitat. (*Id.*)

### D. The injunction should not remain in place pending completion of the consultation ordered in *Salix*.

Plaintiffs disagree with the earlier order that the Forest Service met its Section 7 obligations under the ESA. (Doc. 74 at 28.) Section 7(d), 16 U.S.C. § 1536(d), prohibits an agency from making, during a formal ESA consultation, an "irreversible or irretrievable commitment of resources." Plaintiffs further argue that *Salix v. U.S. Forest Service*, 944 F.Supp.2d 984 (D. Mont. 2013) controls maintaining the injunction pending completion of consultation on how the Lynx Direction may affect critical habitat. (Doc. 74 at 29.) Plaintiffs insist that, until the consultation ordered in *Salix* occurs, the Forest Service and Fish and Wildlife Service have yet to understand how the Lynx Direction *may* affect critical habitat, which in turn *may* alter how Colt Summit is implemented. (Doc. 74 at 29.)

16

1. **ESA Section 7**

This Court has already held that the Colt Summit project met its Section 7 ESA obligations. *Friends of the Wild Swan,* 875 F. Supp. 2d 1199 at 1209. The injunction at issue only relates to the cumulative effects analysis within NEPA. It is beyond the scope of the current motion to reconsider that order regarding Section 7 ESA obligations. Fed. R. Civ. P. 60(b) (requiring relief from a judgment or order to be made on motion, no more than a year after the entry of order).

2. **Irreparable Harm**

In *Salix*, the court declined to enjoin all projects implementing the Lynx Direction in critical habitat without a showing of "likely and irreparable harm." 944 F. Supp. 2d at 1002. Plaintiffs have failed to make a showing of likely or irreparable harm. There was no showing of the extent or type of harm that could potentially occur after the required consultation ordered in *Salix*. (Doc. 74 at 29) (Plaintiffs only contend that the consultation may affect critical habitat, which may affect the implementation of Colt Summit).) Plaintiffs did not show how, if harm would occur by the Colt Summit Project, the harm would be irreparable. Plaintiffs referred to Squires' statement that there is "likely a threshold of thinning below which lynx will not be able to persist." T–101:FS73976. However, no showing

was made as to what that threshold would be and how the Colt Summit Project would likely bring the Clearwater LAU below that threshold.

## CONCLUSION

IT IS ORDERED that Defendants' Second Motion to Dissolve Injunction (Doc. 68) is GRANTED. The Forest Service has complied with the July 11, 2012 order (Doc. 50) requiring it prepare an SEA which includes a cumulative effects analysis on lynx.

The Clerk is directed to notify the parties of the entry of this order dissolving the injunction previously entered.

Dated this 4th day of April, 2014.

*[signature]* 15:17 P.M.

Donald W. Molloy, District Judge
United States District Court