

FILED

OCT 0 6 2016

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FRIENDS OF THE WILD SWAN, a non-profit organization; et al.,

Plaintiffs,

vs.

TIM GARCIA, in his official capacity as Forest Supervisor for the Lolo National Forest; et al.,

Defendants.

CV 11-125-M-DWM

OPINION
and ORDER

While this case was pending on appeal, the Ninth Circuit decided *Cottonwood Environmental Law Center v. United States Forest Service*, holding that due to procedural flaws, "the Forest Service must reinitiate consultation on the Lynx Amendments." 789 F.3d 1075, 1085 (9th Cir. 2015). Accordingly, in May 2016, the Ninth Circuit affirmed-in-part, reversed-in-part, and remanded this case for the limited purpose of determining whether the Forest Service performed sufficient independent Section 7 analysis of the Colt Summit Project to render any reliance on the Lynx Amendments harmless. (Docs. 93, 97.) The parties briefed the issue, and Plaintiffs requested injunctive relief. (Doc. 99.)

1

Contrary to Plaintiffs' position, *Cottonwood* does not establish a *per se* rule invalidating all projects involving lynx pending re-initiation of consultation on the Lynx Amendments under the Endangered Species Act ("ESA"). The Forest Service performed sufficient independent Section 7 analysis of the Colt Summit Project to render any reliance on the Amendments harmless. Judgment is entered in favor of the defendants. Plaintiffs' request for injunctive relief is denied.

## BACKGROUND

The Forest Service initially prepared an Environmental Assessment for the Colt Summit Project which proposes, among other things, to manage vegetation on 2,038 acres of commercial and non-commercial land; to restore, reconstruct, and decommission miles of roadway; to replace/repair two culverts; and to treat noxious weeds. The Forest Supervisor issued a finding of no significant impact and, in 2011, Plaintiffs brought suit, alleging failures to comply with the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), and Section 7 of the ESA. Following cross-motions for summary judgment, the matter was remanded to the Forest Service on the narrow grounds that it failed to adequately analyze the Project's cumulative effects on lynx under NEPA "so that it may prepare a supplemental environmental assessment consistent with th[at] order and the law." (Doc. 50 at 46.)

In January 2013, the Forest Service prepared a "supplement to the environmental assessment" and filed a motion to dissolve the injunction. (Doc. 60.) That motion was denied as the "supplement" was not a required NEPA document. (Doc. 67.) The Forest Service then prepared a Supplemental Environmental Assessment ("SEA") and, in December 2013, filed a second motion to dissolve the injunction. (Doc. 68.) That motion was granted, (Doc. 76), and Plaintiffs appealed, (Doc. 79). After both this Court and the Ninth Circuit denied Plaintiffs' request for injunction pending appeal, the Project commenced on June 23, 2014. At present, over 45% of timber harvest and post-harvest treatments, 95% of road construction and pre-haul maintenance, and 55% of road decommissioning have been completed. (Doc. 102 at 6.) Project activities are expected recommence on December 1, 2016, and the Project is expected to be substantially complete by spring 2017. (*Id.*)

## STANDARD

The Ninth Circuit vacated this Court's determination that the Forest Service complied with the ESA, 16 U.S.C. § 1531 *et seq.*, in relation to the lynx and lynx critical habitat. (Doc. 93 at 3.) Courts review claims regarding the ESA under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706 *et seq. See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002). Under the

APA, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The court's scope of review is narrow, and the court should "not [] substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A decision is arbitrary and capricious:

> only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1224 (9th Cir. 2011). An agency's actions are valid if it "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Id.* (citation and internal quotation marks omitted). As long as the record supports the agency's decision, that decision should be upheld even if the record could support alternative findings. *Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992).

## ANALYSIS

The Forest Service insists that its Section 7 lynx analysis is sufficient independent of the Lynx Amendments because also it examined the four primary constituent elements ("PCE") of lynx critical habitat. Plaintiffs concede that the

4

Forest Service performed project-specific analysis related to the lynx but appear to argue that *Cottonwood* establishes a *per se* rule invalidating all projects involving lynx pending re-initiation of ESA consultation on the Lynx Amendment. Plaintiffs are incorrect.

## A. *Per Se* Rule

In *Alliance for the Wild Rockies v. Savage*, Judge Christensen directly addressed and rejected the idea that *Cottonwood* establishes "a *per se* rule prohibiting timber projects from proceeding pending the [agencies] reinitiating consultation on the Lynx Amendment."[1] ___ F. Supp. 3d___, 2016 WL 3951362, at *10 (D. Mont. July 19, 2016) (discussing why the *Cottonwood* decision does not support such a rule); *see also Swan View Coalition v. Weber*, 52 F. Supp. 3d 1133, 1153 (D. Mont. 2014); *Native Ecosystems Council v. Krueger*, 2014 WL 9954189, at *7 (D. Mont. June 4, 2014). Plaintiffs' reliance on *Kern v. United States Bureau of Land Management*, 284 F.3d 1062 (9th Cir. 2002), to argue to the contrary is unavailing because *Kern* does not foreclose the possibility of sufficient

---

[1] In *Savage*, the Ninth Circuit granted the plaintiffs' request for an injunction pending appeal, citing *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008). That order includes no further analysis or findings. While Plaintiffs are correct that it means the *Savage* plaintiffs showed a likelihood of success on the merits (or at the very least serious questions as to the merits), *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), that project, and its potential impact on lynx, is different from the one here. Judge Christensen's decision in *Savage* remains persuasive.

independent analysis. Moreover, the Ninth Circuit's language and the nature of the remand order in this case undercuts Plaintiffs' interpretation. If the Forest Service's project-specific analysis could not be sufficient regardless of whether it relied on the Lynx Amendments or not, it would be pointless to ask this Court to decide that very question.

B.     **Independent ESA Analysis**

There is no question that the Forest Service relied on and used the Lynx Amendments in performing its Section 7 obligations. (*See* Doc. 50 at 17-20; Doc. 76 at 12-14.) Nonetheless, the Forest Service performed sufficient independent analysis as to render that reliance harmless. Under Section 7(a)(2) of the ESA, the Forest Service is required to ensure, in consultation with the Fish and Wildlife Service, that the Colt Summit Project "is not likely to jeopardize the continued existence" of the lynx, or "result in the destruction or adverse modification of" lynx critical habitat. 16 U.S.C. § 1536(a)(2). Because the Forest Service concluded the Project "may affect" lynx and lynx critical habitat, it was required to consult with the Fish and Wildlife Service. 50 C.F.R. § 402.14(a). During that informal consultation, the Forest Service prepared a "biological assessment" to evaluate the potential effects of the Project on lynx and lynx critical habitat to determine whether they "are likely to be adversely affected by the action." 50

C.F.R. § 402.13; K-26. After requesting the Forest Service prepare an additional "PCE table" addressing how the Project would affect lynx critical habitat, K-32:FS001547, the Fish and Wildlife Service concurred with the Forest Service's determination of "not likely to adversely affect," K-26:FS001490; K-33:FS001555-57, and no formal ESA consultation occurred, *see* 50 C.F.R. § 402.13(a). An action "is not likely to adversely affect" a listed species when the effects "are expected to be discountable, insignificant, or completely beneficial." Final ESA Section 7 Consultation Handbook xv (1998).

The Forest Service's Section 7 analysis for the lynx primarily manifested in two documents in the Administrative Record: the initial January 2011 biological assessment, K-26, and the February 2011 PCE table created at the request of the Fish and Wildlife Service, K-32.[2] According to the 2011 Biological Assessment, while there are lynx and lynx critical habitat in the Project area, the habitat conditions and lynx populations vary with elevation and aspect. K-26:FS001478. Overall, stands at lower elevations "do not represent potential lynx habitat" as they have relatively open understories. *Id.* With increasing elevation, the understories become more complex and are considered to be suitable lynx habitat. *Id.* at FS001478-79. Generally, habitat conditions for lynx in this area are good at

---

[2] *See also* M16-45:FS015209-23 (Wildlife Report).

7

elevations above 6,000 feet. *Id.* at FS001479. The Assessment notes that the Project falls below the 6,000-foot elevation preferred by lynx, *id.* at FS001479, and explains that "mature, multi-storied forests with high horizontal cover in the understory" were not selected because they are important to lynx foraging habitat. *Id.* at FS001484. Using Lynx Amendment guideposts, the Assessment discussed elevation, vegetative structures, snowshoe hare habitat, snow compaction, and habitat connectivity. *Id.* at FS001477-85.

The Forest Service's brief on remand includes a thorough explanation for how the analysis included in the Assessment, which was initially framed in the context of the Lynx Amendment, overlapped an independent PCE-based approach. (*See* Doc. 102 at 9-14.) The PCE table analyzes the four PCE components of lynx critical habitat: (1a) presence of snowshoe hares and their preferred habitat of dense understories; (1b) deep and fluffy snow; (1c) denning habitat with woody debris; and (1d) matrix habitat facilitating travel between patches of foraging. K-32:FS001554. The table explains that the "areas proposed for mechanical treatment, slashing and underburning are not high quality snowshoe hare habitat" (1a); that the lower, drier elevation of the Project area is not preferred for lynx habitat (1b); that the area is not characterized as high quality denning habitat and is used less by lynx than adjacent areas (1c); and that while lynx move through the

8

area, connectivity will be maintained (1d). *Id.* The Forest Service also considered data collected from GPS collars and from ground-based and aerial radio telemetry using convention VHF collars to show the habitat selected by lynx in the area. *Id.* at FS001553. This dataset supports the conclusion that the lynx use the drier-lower elevations of the Project area less and that the Project area is not itself high quality lynx habitat. *Id.* After reviewing the PCE table, the Fish and Wildlife Service concurred that the effects of the Project on lynx and lynx critical habitat would be "insignificant." K-33:FS001555-57.

Plaintiffs' only argument is that this analysis is not sufficient under the ESA because it lacks programmatic consideration in the absence of the Lynx Amendment. While this is not a *per se* bar to ESA-compliance, as discussed above, it could be insufficient if it meant the agencies failed to consider an important aspect of the problem or offered an explanation that runs counter to the evidence. *Gardner*, 638 F.3d at 1224. That is not the case here, however, as the agencies considered lynx populations and movements outside the Project area, K-32:FS001549, 1552 (depicting lynx locations in the Seeley area); *id.* at FS001551 (depicting lynx locations in the Missoula, Seeley-Swan, Ovando, and Flathead valleys), and habitat features throughout the area surrounding the Project, *id.* at FS001550, to conclude that the Project area was not "high quality lynx habitat,"

9

*id.* at FS001553. *See also* Supp. EA, X001:FS078951-53, FS078956-60. Even stripped of reliance on the Lynx Amendments, this analysis supports the agencies' conclusion that the Project will "not adversely modify or adversely affect lynx critical habitat." K-26:FS001490; K-33: FS001556-57.

Plaintiffs' remaining arguments are equally unpersuasive. Plaintiffs' geographic scope argument was addressed and rejected on appeal. (*See* Doc. 93 at 1-2 ("The Forest Service appropriately justified its decision to look only at the Clearwater Lynx Analysis Unit in measuring the Project's impact on the lynx and its critical habitat . . . .").) Plaintiffs also rely on the recently released Kosterman Study to argue the Forest Service failed to properly consider the quantitative habitat needs of lynx. While the ESA requires agency action to be based on "the best scientific and commercial data available," 16 U.S.C. § 1536(a)(2), Plaintiffs' citation to an extra-record, post-decisional study does not show that the agencies failed to do so here. *See Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1080 (9th Cir. 2006) ("The best available data requirement merely prohibits an agency from disregarding available scientific evidence that is in some way better than the evidence it relies on." (internal quotation marks and edits omitted)).

## CONCLUSION

The agencies' conclusion that the Project is not likely to adversely affect the

lynx and lynx critical habitat is reasonable and supported by independent facts and analyses, rendering any reliance on the Lynx Amendment harmless. The agencies met their obligations under Section 7.

Accordingly, IT IS ORDERED that the Clerk of Court is directed to enter judgment in favor of the defendants and against the plaintiffs.

I T IS FURTHER ORDERED that Plaintiffs' motion for injunctive relief (Doc. 99) is DENIED. The Clerk of Court is directed to close the case file.

Dated this ____ day of October, 2016.

/4:47 P.M/

Donald W. Molloy, District Judge
United States District Court